**FILED & ENTERED**

**NOV 16 2020**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gooch      DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>LINDA RENE BASQUEZ,<br><br>        Debtor. | Case No.: 6:18-bk-19790-WJ<br><br>CHAPTER 7<br><br>**MEMORANDUM OF DECISION DENYING TWENTY-FOUR OBJECTIONS TO CLAIMS**<br><br>Hearing:<br>Date:    November 17, 2020<br>Time:   1:00 p.m.<br>Crtrm.:  304 |

Hearings were originally scheduled in this case for November 17, 2020 at 1:00 p.m. regarding twenty-seven objections to claims filed by the debtor, Linda Basquez ("Debtor"). Earlier today, the Court entered three scheduling orders regarding three of the objections. This memorandum of decision and accompanying order resolves the remaining twenty-four objections to claims (collectively, the "Objections") without a hearing.[1] Having reviewed the twenty-four

---

[1] The twenty-four Objections resolved by this Memorandum of Decision are the following pleadings: Opposition of Debtor Linda Basquez to the Claim of Jeffrey Vilasayne; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #253] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Kevin Bui; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #256] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Alisha Cruzan; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #257] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Diane DeGeorge; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #258] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Bridget Dorn; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #259] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Tracy Ferris; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #260] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of David Fishbeck; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #261] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Apelu Foisaga; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #262] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Anthony Hapeman; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #263] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Steven Hill; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #264] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Robert Klunk; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #265] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Jane Laxamana; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #267] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Ramon Mascorro; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #268] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Kent Morgan; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #269] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Mary Newton; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #270] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Maria Panaligan; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #271] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Tyla Catena; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #272] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Mariel Saldana; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #273] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Gagik Shaverdian; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #274] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Joe Strange; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #275] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Hanyu Xie; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #277] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Danielle Starkman; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #278] filed on October 18, 2020; Opposition of Debtor Linda Basquez to the Claim of Christopher Stamas; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration of Stuart J. Wald [docket #279] filed on October 18, 2020; and Opposition of Debtor Linda Basquez to the Claim of Sara Jacques; Declaration of Christina Gomez; Declaration of Kimberly Schreyer; Declaration

Objections, the responses by the creditors who are the targets of the Objections ("Creditors")[2] and related pleadings, the Court hereby finds that no oral argument regarding the Objections is necessary. Pursuant to Rule 9013-1(j)(3) of the Local Bankruptcy Rules, the Court hereby takes off calendar the hearings and waives appearances. No hearings regarding the twenty-four Objections shall occur. For the following reasons, the Court hereby denies the Objections.

## I. JURISDICTION.

The bankruptcy court has jurisdiction over the Objections pursuant to the provisions of 28 U.S.C. §§ 157(b) and 1334(b). The Objections are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(B). Venue is appropriate in this Court. 28 U.S.C. § 1409(a).

## II. FACTUAL BACKGROUND.

The Debtor and her deceased husband previously operated a gambling school – Casino Career Center, Inc. ("CCC") – that taught students skills needed to work as dealers in casinos. The Creditors were all students at the school who paid tuition on or after December 24, 2010. The Creditors sued CCC, the Debtor and her husband in state court, asserting five causes of action for (1) unfair competition, (2) fraud, (3) negligent misrepresentation, (4) fraudulent concealment and (5) constructive fraud.[3] The state court certified the matter as a class action lawsuit. The Court defined the class as "[a]ny person who, on or after December 24, 2010, paid tuition to Defendants, or any agent or employee of any Defendant, for enrollment in, or attendance at, CCC" and appointed the plaintiff, Vanessa Gutierrez, as the class representative.[4]

---

of Stuart J. Wald [docket #280] filed on October 18, 2020.

[2] As used in this decision, the term "Creditors" refers to the twenty-four creditors holding the twenty-four claims that are the subject of the twenty-four Objections.

[3] The first amended complaint is dated December 1, 2016 and is attached as Exhibit "A" to claim #8-1 filed on September 3, 2019.

[4] The order of the Superior Court dated December 27, 2017 certifying the class is attached as Exhibit "B" to claim #8-1 filed on September 3, 2019.

1     Eventually, the Debtor filed a chapter 11 bankruptcy case on November 19, 2018 and the case converted to chapter 7 on June 4, 2019. The Creditors then filed proofs of claims and, thereafter, the Debtor filed the Objections to the claims of the Creditors. The twenty-four Objections are very short and nearly identical. Each of the Objections consists of a brief that is only two pages in length and several declarations.

### III. THE OBJECTIONS ARE INSUFFICIENT SKELETAL PLEADINGS.

    The Court hereby denies the Objections for several reasons. First, the Objections are bare bones pleadings. The briefs are only two pages in length and contain little analysis or case authority. Citations to statutes are sparse and the briefs only mention one published case. The Objections are skeletal pleadings.

    Statutory authority matters. Case law matters.

    The failure to discuss cases or legal authority in a meaningful way can be construed as a waiver of the basis for seeking relief. Courts often deny motions when moving parties fail to provide developed legal reasoning or to cite sufficient case authority in support of motions. See Rivera v. ASUME (In re Rivera), 486 B.R. 574, 579 (1st Cir. BAP 2013) ("The debtor made only passing mention of Rule 60(b)(6) in his motion for relief, and did not develop this argument in his brief. On this basis, we could conclude that the debtor has waived the issue."); In re Archer, 264 B.R. 165, 166 & 168 (Bankr. E.D. Va. 2001) (denying a motion to reinstate a chapter 13 case and noting that "counsel for debtor failed to provide any case law in support of the delayed motion" and "debtor has cited no authority for the court's vacation of the dismissal order"); Witkowski v. Boyajian, 523 B.R. 300, 308 (1st Cir. BAP 2014) (affirming the denial of a motion to vacate a dismissal order and noting that the motion to vacate was "a bare bones motion, devoid of factual or legal support."); In re Porter, 2014 Bankr. LEXIS 5350, *5 & *9-10 (Bankr. S.D. Miss. 2014) (denying a motion to vacate dismissal of a chapter 13 case and stating that "[t]he Reinstatement Motion does not cite the legal basis for the relief requested . . . . The Reinstatement Motion does not refer to Rule 60 or any other authority and, consequently, does not identify which of the Rule 60(b) grounds might apply."); In re Ballone, 2015 Bankr. LEXIS 372, *1

(Bankr. W.D.N.Y. 2015) (denying a motion by a chapter 13 debtor to vacate dismissal of his case and stating that the motion to vacate the dismissal "does not point to Rule 60(b) FRCP, as modified by Rule 9024 FRBP, as its basis, nor does it point to any other rule, statutory provision, or precedent as its foundation."); In re Golden-Collier, 2015 Bankr. LEXIS 451, *4-5 (Bankr. W.D.N.Y. 2015) (denying a motion by a chapter 13 debtor to vacate dismissal of his case and stating that the motion to vacate the dismissal "does not point to Rule 60(b) FRCP, as modified by Rule 9024 FRBP, as its basis, nor does it point to any other rule, statutory provision, or precedent as its foundation."); see also Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc., 104 F.Supp.3d 371, 377 (S.D.N.Y. 2015) (stating that a brief filed in opposition to a motion for summary judgment "lacks substance" because it consisted "only of a brief that cites no cases, a conclusory declaration, and irrelevant attachments"); In re Clark, 2016 Bankr. LEXIS 2147, *2 (Bankr. N.D. Ind. 2016) (denying a motion by a chapter 12 debtor to vacate an order dismissing the case and stating that the motion "fails to identify the rule upon which it is based and is not accompanied by a brief in support thereof as required by the local rules of this court").

      As the First Circuit Court of Appeals aptly stated: "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . 'Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.'" United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also, United States v. Alonso, 48 F.3d 1536, 1544 (9th Cir. 1995) (citing Zannino with approval and stating that "an issue merely 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation'" is insufficient); Kost v. Kozakiewicz, 1 F.3d 176, 182 (3rd Cir. 1993) (holding that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue . . ." and refusing to consider an argument made "in passing in a short footnote in their opening brief, without argument or relevant citation."); see, e.g., Benoit v. Deutsche Bank National Trust Co., 564 B.R. 799, 806 (1st Cir. BAP 2017) (affirming an order of the bankruptcy court dismissing a chapter 13 case and holding

1   that the debtor could not raise a new argument on appeal that he failed to present to the

2   bankruptcy court and stating "the Debtor waived this argument by failing to raise it in the

3   proceeding below.").

4         Under applicable case law, skeletal pleadings that lack a meaningful discussion of the law

5   are disfavored. Very short motions that fail to cite cases and provide sufficient legal analysis are

6   often denied. In this case, the two-page meager Objections are not sufficient and do not carry the

7   burden of establishing sufficient grounds for relief against other parties.[5]

8

9   **IV.  THE OBJECTIONS TO THE CLAIMS DO NOT REBUT THE PRIMA FACIE**

10  **VALIDITY OF THE CLAIMS.**

11  **A.    The Legal Standard.**

12  Second, section 502(a) of the Bankruptcy Code provides that a proof of claim is "deemed

13  allowed" until an objection is filed. A proof of claim is presumed to be valid until an objection is

14  filed. But not any objection is sufficient to rebut the presumption. Instead the moving party must

15  provide sufficient evidence to initially rebut the presumption. In this case, the Objections do not

16  do so.

---

[5] There are several specific instances in which the briefing by the Debtor is wholly inadequate. First, as discussed throughout this decision, the Debtor failed to address key allegations of misconduct (intentional and unintentional) alleged in the state court complaint which are the basis for the claims of the Creditors. The Debtor has not provided a meaningful response to the foundation for the claims of the Creditors.

Second, the Debtor argues (very briefly) that the claims of the Creditors are barred by the statute of limitations. However, it is undisputed that the Creditors filed a state court action pre-bankruptcy, well within the period of the statute of limitations. Thus, the Debtor seems to believe that filing a state court lawsuit pre-petition does not satisfy the statute of limitations as long as the subsequent bankruptcy case is filed after the expiration of the statute of limitations (even if the state court action is still pending on the petition date). However, while the Debtor seems to assume this legal argument, the Debtor did not state the argument in the Objections nor provide any case authority whatsoever in support. Therefore, the statute of limitations argument is so undeveloped as to be waived. Courts are not supposed to be mind readers. The Creditors argue that the Objections are "frivolous" and, in particular, with respect to the statute of limitations argument, the Creditors argue that the "Debtor cites no authority, and can cite no authority, supporting that proposition." This is a persuasive response to the undeveloped and unsound statute of limitations argument of the Debtor.

Third, in the Debtor's reply brief, the Debtor notes that the Creditors contend that the Debtor was operating the school "in violation of California law." See Docket #342, page 2, line 17. The Debtor has a one sentence response: "Even if true, this is a matter for regulatory review." See Docket #342, page 2, line 17-18. This response is wholly inadequate.

In effect, the Debtor contends that operating a school "in violation of California law" does not give rise to a cause of action under California law. In effect, the Debtor argues that the allegations in the state court complaint asserting that the Debtor operated in violation of California law fail to state a claim upon which relief can be granted. However, the Debtor provides absolutely no case authority or legal authority for this assertion. This one sentence response by the Debtor is wholly inadequate.

"A duly executed proof of claim is prima facie evidence of the validity and amount of a claim. Rule 3001(f). The burden then switches to the objecting party to present evidence to overcome the prima facie case … In Re Holm, 931 F.2d 620, 623 (9th Cir. 1991)." Murgillo v. Board of Equalization (In Re Murgillo), 176 B.R. 524, 529 (9th Cir. BAP 1995). When a creditor files a proof of claim that complies with the rules (thereby giving rise to the presumption of validity), the burden shifts to the objecting party who must "present evidence to overcome the prima facie case." United States v. Offord Fin., Inc. (In re Medina), 205 B.R. 216, 222 (9th Cir. BAP 1996). To defeat the claim, the objecting party must provide sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting In re Holm, 931 F.2d 620, 623 (9th Cir. 1991)). "The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." Lundell, 223 F.3d at 1040 (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)). The failure to submit evidence in support of an objection to a claim that enjoys prima facie validity is fatal to the objection. A prima facie valid claim prevails over an objection that has no supporting evidence. Garner v. Shier (In re Garner), 246 B.R. 617 (9th Cir. BAP 2000).

In this case, each of the Objections fails to rebut the presumption of prima facie validity. While creditors have the ultimate burden of proving claims, objecting parties must (initially) overcome the prima facie presumption. The Debtor has failed to do so in the Objections.

Specifically, the proofs of claims are based on alleged wrongful conduct (both intentional and negligent) outlined in the state court complaint. The first amended complaint alleges (among other things) approximately thirty introductory pages of alleged wrongful conduct by the Debtor and seeks damages alleging that the Debtor engaged in unfair business practices in violation of a dozen provisions of the California Business & Professions Code as well as the California Education Code. The complaint alleges that the Debtor engaged in wrongful conduct by (among other things): "falsely stating in CCC's promotional flyers and the Basquez Defendants' business cards and on CCC's certificates of completion that CCC is certified by the BPPVE; falsely

advertising that 'All instructors at [CCC] are State Certified' on CCC's website; falsely advertising that CCC has a limited supply of scholarships and grants to pay 65% to 100% of students' tuition on CCC's website; falsely advertising that CCC's Blackjack course costs $3,000 and that CCC's U.R.P. course costs $2,200 in CCC's promotional flyers; falsely advertising and stating that $1,500, and $1,100 represent 50% tuition discounts for CCC's Blackjack and U.R.P. courses respectively through CCC's website and orally at the time of enrollment; falsely stating that students may seek recourse from the BPPVE in CCC's Enrollment Agreement; falsely stating that Defendants can guarantee employment at the Pechanga Resort and Casino orally at the time of enrollment; and falsely advertising that CCC's Educational Program takes 'Up to 8 weeks to complete' in CCC's promotional flyer."[6]

However, the Objections ignore these allegations. Indeed, the Objections do not mention (much less address) the state court action or the state court allegations. The Objections are simply silent on these allegations.

Similarly, the Objections ignore the other allegations in the complaint. The rest of the complaint asserts causes of action for fraud and negligent misrepresentation. For example, the second cause of action contains many allegations of fraud in over two dozen paragraphs (paragraphs 188 to 214) including, but not limited to, the following allegations:

> 188) Defendants falsely advertised in writing, and Mrs. Basquez falsely stated, that CCC was "state certified" by prominently displaying the following text on CCC' s promotional flyers, "State Certified BPPVE#3303011" and by Mrs. Basquez's presentation of those promotional flyers to Plaintiff and the other members of the class when Mrs. Basquez sold CCC's Educational Programs to Plaintiff on or about October 15, 2013 prior to Plaintiff enrolling at CCC, and to other members of the class when those class members visited CCC prior to enrolling.

---

[6] The first amended complaint is dated December 1, 2016 and is attached as Exhibit "A" to claim #8-1 filed on September 3, 2019. The quoted section appears in paragraph 181 on page 31, line 19 to page 32, line 2.

189)   Defendants falsely stated and advertised in writing, that CCC was "state certified" by presenting business cards that show the following text: "State certified Vocational Training Lic. # 3303011" to Plaintiff and other members of the class prior to their enrollment at CCC.  Specifically, Linda Basquez gave Plaintiff her business card when Plaintiff visited CCC on or about October 15, 2013.  Plaintiff is informed and believes that Linda Basquez routinely gave her business card to other members of the class when they visited CCC prior to enrolling and to members of the general public when she was not at CCC.

Overall, the complaint contains 350 paragraphs spanning 56 pages that outline extensive alleged misconduct by the Debtor and related parties.  Some of the misconduct is based on fraud and other causes of action are not based on fraud.  Most of the allegations are based on misrepresentations allegedly perpetrated by the Debtor and related parties (intentionally or negligently).

Nevertheless, the Objections do not mention the complaint or the allegations asserted.  In one (very short) section of the Objections, the Debtor alleges that the Creditors assert fraud against the Debtor but the Debtor does not mention the complaint or attempt to address the allegations in the complaint.  Instead, the Debtor simply states (in effect), the Creditors allege fraud and the Debtor denies it.

However, a denial is not enough.  When a creditor files a proof of claim, a debtor cannot object to the claim by simply stating, "I disagree."  More is required to rebut the prima facie validity of the claim.  The objecting party needs to address the allegations and provide some relevant evidence.

**B.     The Moving Party Has Not Carried Its Initial Burden.**

In this case, not only do the Objections not address the allegations in the complaint, the Objections contain virtually no evidence in support.  For example, the objection by the Debtor to the claim of Kevin Bui (claim #9) contains a 38 paragraph declaration by Christina Gomez but only one paragraph (#13) pertains to Mr. Bui and that paragraph is only two sentences long.  It states in its entirety: "With regard [to] Kevin Bui, claimant #9, he did not complete the CCC

course. He dropped out after deciding to become a mechanic and work with members of his family." This is the only evidence in support of the objection to the claim of Mr. Bui and this evidence is woefully insufficient. The statements do not address the allegations in the complaint nor provide even a meager basis for refuting them.

In addition, the declaration of Mr. Bui in response to the objection contains a thorough response that explains how the Debtor took his payments and misled him.[7] Mr. Bui also describes some commentary by Ms. Gomez as "not true."[8] Overall, the information and detail in the fifteen paragraph declaration of Mr. Bui is far more extensive and relevant than the two sentences in the declaration of Ms. Gomez.

Likewise, the other Objections contain very little evidence in support of the Objections. The Objections to the other twenty-three claims, like the objection to the claim of Mr. Bui, contain very little evidence (often just one or two sentences) and fall far short of what is needed to rebut the presumption of prima facie validity.

Specifically, the evidence in support of the Objections to the claims of the following Creditors is insufficient to rebut the prima facie validity of the claims:

Jeffrey Vilasayne (claim #7),[9]

Alisha Cruzan (claim #10)[10],

---

[7] See Docket #314, Declaration of Kevin Bui.

[8] See Docket #314, Declaration of Kevin Bui, paragraph 13.

[9] The text of the objection to the claim of Jeffrey Vilasayne [docket #253] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Mr. Vilasayne can be found in paragraph 8 of the declaration of Christina Gomez and merely states the following: "8. With regard to Jeffrey Vilasayne, claimant #7, he was a student at CCC. During the program, he took on a different job (not related to CCC) which had him working six days each week. He eventually dropped out of the CCC program; he did not complete the course." This evidence is not sufficient to rebut the prima facie validity of the claim.

[10] The text of the objection to the claim of Alisha Cruzan [docket #257] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Alisha Cruzan can be found in paragraph 14 of the declaration of Christina Gomez and merely states the following: "14. With regard to Alicia [sic] Cruzan, claimant #10, she completed the CCC course, but CCC does not have any record of her applying for a position at any casino. If there had been such an application, CCC would have received notice and possibly inquiries from the relevant human resources and/or other department, but no such notice was ever given to CCC. Cruzan was offered some temporary jobs during her time at CCC working for non-casino projects, such as a fundraising 'Casino Night' or similar event." This evidence is not sufficient to rebut the prima facie validity of the claim and, in addition, Alisha Cruzan provided a

Diane De George (claim #11)[11],

Bridget Dorn (claim #12)[12],

Tracy Ferris (claim #13)[13],

David Fishbeck (claim #14)[14],

---

thorough response in her declaration in opposition to the objection [docket #317] which explains how the Debtor misled her. The information and detail in the declaration of Alisha Cruzan is more extensive and relevant than the statements in the declaration of Christina Gomez.

[11] The text of the objection to the claim of Diane De George [docket #258] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Diane De George can be found in (a) paragraph 15 of the declaration of Christina Gomez which merely states the following: "15. With regard to Diane De George, claimant #11, she completed the CCC course. CCC assisted her in getting a casino job with the Pechanga casino, and she was still working there until the Covid-19 shutdown." and (b) paragraph 11 of the declaration of Kimberly Schreyer which merely states: "11. Diane De George, claimant #11, completed the CCC course. CCC assisted her in getting a casino job with the Pechanga casino, and she was still working there until the Covid-19 shutdown." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Diane De George provided a thoughtful response in her declaration in opposition to the objection [docket #331] which explains how the Debtor misled and mistreated her. The information and detail in the nine paragraph declaration of Diane De George is more extensive, thoughtful and relevant than the pertinent portions of the declarations of Christina Gomez and Kimberly Schreyer. In addition, Ms. De George states in paragraph 7 of her declaration that the testimony of both Ms. Gomez and Ms. Schreyer is "not true."

[12] The text of the objection to the claim of Bridget Dorn [docket #259] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Bridget Dorn can be found in paragraph 16 of the declaration of Christina Gomez which merely states: "16. With regard to Bridget Dorn, claimant #12, she did not complete the CCC course." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Bridget Dorn provided a thoughtful response in her eleven paragraph declaration in opposition to the objection [docket #318] which explains how the Debtor misled and mistreated her. The information and detail in the declaration of Bridget Dorn is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez. In addition, Ms. Dorn directly contradicts the assertion by Ms. Gomez that Ms. Dorn did not complete the CCC course.

[13] The text of the objection to the claim of Tracy Ferris [docket #260] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Tracy Ferris can be found in paragraph 17 of the declaration of Christina Gomez which merely states: "17. With regard to Tracy Ferris, claimant #13, she did not complete the CCC course, nor did she pay the full course fee. Despite this, she obtained a job at Pala casino." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Tracy Ferris provided a thoughtful response in her 24 paragraph declaration in opposition to the objection [docket #315] which explains in considerable detail how the Debtor misled and repeatedly abused her. The information and detail in the declaration of Tracy Ferris is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez. Among other things, Ms. Ferris noted that the Debtor was routinely abusive toward her.

[14] The text of the objection to the claim of David Fishbeck [docket #261] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of David Fishbeck can be found in paragraph 18 of the declaration of Christina Gomez which merely states: "18. With regard to David Fishbeck, claimant #14, he had been a teacher in the past, and entered the CCC program to seek a new career. He eventually decided that he did not want to pursue a career in casino gaming, and wanted to return to teaching. CCC then had him contact Pechanga to interview for an educational job." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, David Fishbeck provided a thoughtful response in his eight paragraph declaration in opposition to the objection

1   Apelu Foisaga (claim #15),[15]

2   Anthony Hapeman (claim #16)[16],

3   Steven Hill (claim #17)[17],

4   Robert Klunk (claim #18)[18],

---

[docket #327] which explains how the Debtor misled him. The information and detail in the declaration of David Fishbeck is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[15] The text of the objection to the claim of Apelu Foisaga [docket #262] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Apelu Foisaga can be found in paragraph 19 of the declaration of Christina Gomez which merely states: "19. With regard to Apelu Foisaga, claimant #15, he completed the CCC course and passed the audition for a job with Pechanga casino. After that, he admitted that he had a criminal record, something that he had been asked as part of CCC's standard opening questionnaire and which he had then denied. Because of this, he was not employed by Pechanga. CCC then worked with Foisaga to find him a different casino job, but he eventually went to work in a different field at his wife's request." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Apelu Foisaga provided a thoughtful response in his 35 paragraph declaration in opposition to the objection [docket #328] which explains how the Debtor misled him and was abusive toward him and other students. The information and detail in the declaration of Apelu Foisaga is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[16] The text of the objection to the claim of Anthony Hapeman [docket #263] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Anthony Hapeman can be found in paragraph 20 of the declaration of Christina Gomez which merely states: "20. With regard to Anthony Hapeman, claimant #16, he was in the military reserves when he started the CCC program to get new job skills. He did not complete the program, and took a job in a different field." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Anthony Hapeman provided a thoughtful response in his twelve paragraph declaration in opposition to the objection [docket #319] which explains how the Debtor misled and/or mistreated him. The information and detail in the declaration of Anthony Hapeman is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[17] The text of the objection to the claim of Steven Hill [docket #264] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Steven Hill can be found in (a) paragraph 21 of the declaration of Christina Gomez which merely states: "21. With regard to Steven Hill, claimant #17, he completed the CCC course, got a job at the Blue Water Casino in Arizona, and moved there." and (b) paragraph 10 of the declaration of Kimberly Schreyer which merely states: "10. Steven Hill, claimant #17, completed the CCC course. He worked at Pechanga casino for a while, and then moved out of the area." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Steven Hill provided a thoughtful response in his declaration in opposition to the objection [docket #329] which explains how the Debtor misled him. The information and detail in the seven paragraph declaration of Steven Hill is more extensive, thoughtful and relevant than the pertinent portions of the declarations of Christina Gomez and Kimberly Schreyer. In addition, Mr. Hill testified that the statement by Ms. Schreyer is simply false. Mr. Hill states in his declaration that he never worked at the Pechanga casino.

[18] The text of the objection to the claim of Robert Klunk [docket #265] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Robert Klunk can be found in paragraph 22 of the declaration of Christina Gomez which merely states: "22. With regard to Robert Klunk, claimant #18, he did not complete the CCC course." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Robert Klunk provided a thoughtful response in his declaration in opposition to the objection [docket #320] which explains how the Debtor misled him. The information and detail in the eight paragraph declaration of Robert Klunk is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

1    Jane Laxamana (claim #20),[19]

2    Ramon Mascorro (claim #21)[20],

3    Kent Morgan (claim #22)[21],

4    Mary Newton (claim #23)[22],

5    Maria Panaligan (claim #24)[23],

---

[19] The text of the objection to the claim of Jane Laxamana [docket #267] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Jane Laxamana can be found in (a) paragraph 24 of the declaration of Christina Gomez which merely states: "24. With regard to Jane Laxamana, claimant #20, she completed the CCC course, and was then employed by Pechanga casino. At some point after that, she left that job for maternity leave, but returned later to work at Pechanga on the daytime shift." and (b) paragraph 9 of the declaration of Kimberly Schreyer which merely states: "9. Jane Laxamana, claimant #20, completed the CCC course, and was then employed by Pechanga casino. Her husband Mark is also a CCC graduate who then obtained a casino job at Pechanga." This evidence is not sufficient to rebut the prima facie validity of the claim.

[20] The text of the objection to the claim of Ramon Mascorro [docket #268] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Ramon Mascorro can be found in paragraph 25 of the declaration of Christina Gomez which merely states: "25. With regard to Ramon Mascorro, claimant #21, he did not complete the CCC course, and he did not return due to his personal financial issues." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Ramon Mascorro provided a thoughtful response in his declaration in opposition to the objection [docket #321] which explains how the Debtor misled him. The information and detail in the declaration of Ramon Mascorro is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[21] The text of the objection to the claim of Kent Morgan [docket #269] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Kent Morgan can be found in paragraph 26 of the declaration of Christina Gomez which merely states: "26. With regard to Kent Morgan, claimant #22, he was a private investigator before starting the CCC course, and actually did some work for CCC. He did not complete the course; he told CCC that 'it was not for him.'" This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Kent Morgan provided a thoughtful response in his declaration in opposition to the objection [docket #334] which explains how the Debtor misled him. The information and detail in the declaration of Kent Morgan is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[22] The text of the objection to the claim of Mary Newton [docket #270] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Mary Newton can be found in paragraph 27 of the declaration of Christina Gomez which merely states: "27. With regard to Mary Newton, claimant #23, she was proceeding through the CCC course until her mother passed away. Newton then dropped out of the course and did not return." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Mary Newton provided a thoughtful response in her declaration in opposition to the objection [docket #322] which explains how the Debtor misled her. The information and detail in the declaration of Mary Newton is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[23] The text of the objection to the claim of Maria Panaligan [docket #271] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Maria Panaligan can be found in (a) paragraph 28 of the declaration of Christina Gomez which merely states: "28. With regard to Maria David Panaligan, claimant #24, she passed the CCC course, and CCC then helped her obtain a job with Pechanga casino in 2014." and (b) paragraph 8 of the declaration of Kimberly Schreyer which merely states: "8. Maria David Panaligan, claimant #24, passed the CCC

      Tyla Catena (claim #25)[24],

      Mariel Saldana (claim #26),[25]

      Gagik Shaverdian (claim #27)[26],

      Joe Strange (claim #28)[27],

---

course, and CCC then helped her obtain a job with Pechanga casino." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Maria Panaligan provided a thoughtful response in her fourteen paragraph declaration in opposition to the objection [docket #323] which explains how the Debtor misled her. The information and detail in the declaration of Maria Panaligan is more extensive, thoughtful and relevant than the pertinent portions of the declarations of Christina Gomez and Kimberly Schreyer.

[24] The text of the objection to the claim of Tyla Catena [docket #272] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Tyla Catena can be found in (a) paragraph 29 of the declaration of Christina Gomez which merely states: "29. With regard to Tyla Catena, claimant #25, she passed the CCC course, and CCC then helped her obtain a job with Pechanga casino in 2013. She was still employed there as of the Covid-19 shutdown." and (b) paragraph 6 of the declaration of Kimberly Schreyer which merely states: "Tyla Catena, claimant #25, passed the CCC course, and CCC then helped her obtain a job with Pechanga casino in 2013. She worked there for at least five (5) years." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Tyla Catena provided a thoughtful response in her thirteen paragraph declaration in opposition to the objection [docket #324] which explains how the Debtor misled her. The information and detail in the declaration of Tyla Catena is more extensive, thoughtful and relevant than the pertinent portions of the declarations of Christina Gomez and Kimberly Schreyer.

[25] The text of the objection to the claim of Mariel Saldana [docket #273] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Mariel Saldana can be found in (a) paragraph 30 of the declaration of Christina Gomez which merely states: "30. With regard to Mariel Saldana, claimant #26, she passed the CCC course, and CCC then helped her obtain a job with Pechanga casino." and (b) paragraph 7 of the declaration of Kimberly Schreyer which merely states: "7. Maria [sic] Saldana, claimant #26, passed the CCC course, and CCC then helped her obtain a job with Pechanga casino. She was still working at Pechanga as of the Covid-19 shutdown." This evidence is not sufficient to rebut the prima facie validity of the claim.

[26] The text of the objection to the claim of Gagik Shaverdian [docket #274] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Gagik Shaverdian can be found in paragraph 31 of the declaration of Christina Gomez which merely states: "31. With regard to Gagik Shaverdian, claimant #27, he did not complete the CCC course." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Gagik Shaverdian provided a thoughtful response in his declaration in opposition to the objection [docket #325] which explains how the Debtor misled him. The information and detail in the eight paragraph declaration of Gagik Shaverdian is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

[27] The text of the objection to the claim of Joe Strange [docket #275] is nearly identical to the text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Joe Strange can be found in paragraph 32 of the declaration of Christina Gomez which merely states: "32. With regard to Joe Strange, claimant #28, he was working as a prep cook at Pauma casino when he started the CCC program. He passed the course but chose not to go into gaming for personal reasons. He then obtained a job as a cook at Pechanga casino." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Joe Strange provided a thoughtful response in his twenty-three paragraph declaration in opposition to the objection [docket #333] which explains in considerable detail how the Debtor misled him and was abusive toward him and other students. The information and detail in the declaration of Joe Strange is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez.

Hanyu Xie (claim #30)[28],

Danielle Starkman (claim #31)[29],

Christopher Stamas (claim #32)[30] and

Sara Jacques (claim #33)[31].

---

[28] The text of the objection to the claim of Hanyu Xie [docket #277] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Hanyu Xie can be found in (a) paragraph 34 of the declaration of Christina Gomez which merely states: "34. With regard to Hanyu Xie, claimant #30, she completed the program and got a job with Pechanga casino. I believe that she later voluntarily quit that job and went into a different field." and (b) paragraph 5 of the declaration of Kimberly Schreyer which merely states: "5. Hanyu Xie, claimant #30, completed the CCC program and got a job with Pechanga casino. She worked there for several years." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Hanyu Xie provided a thoughtful response in her thirty-one paragraph declaration in opposition to the objection [docket #338] which explains in considerable detail how the Debtor misled her and abused her and other students. The information and detail in the declaration of Hanyu Xie is more extensive, thoughtful and relevant than the pertinent portions of the declarations of Christina Gomez and Kimberly Schreyer.

[29] The text of the objection to the claim of Danielle Starkman [docket #278] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Danielle Starkman can be found in (a) paragraph 35 of the declaration of Christina Gomez which merely states: "35. With regard to Danielle Starkman, claimant #31, she passed the CCC program when she was very young (just over 18, but legal for the field). CCC helped her get a job at Pauma casino, and she later moved to Las Vegas, Nevada to continue casino work." and (b) paragraph 4 of the declaration of Kimberly Schreyer which merely states: "4. Danielle Starkman, claimant #31, passed the CCC program. CCC helped her get a job at Pauma casino, where she worked for several years. She later moved to Las Vegas, Nevada to continue casino work." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Danielle Starkman provided a thoughtful response in her declaration in opposition to the objection [docket #339] which explains how the Debtor misled her. The information and detail in the declaration of Danielle Starkman is more extensive, thoughtful and relevant than the pertinent portions of the declarations of Christina Gomez and Kimberly Schreyer.

[30] The text of the objection to the claim of Christopher Stamas [docket #279] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Christopher Stamas can be found in paragraph 36 of the declaration of Christina Gomez which merely states: "36. With regard to Christopher Stamas, claimant #32, he completed the CCC course, but despite counseling he failed his interviews at Pechanga. He did not concentrate on and pay attention to the interview questions and answer them properly." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Christopher Stamas provided a thoughtful response in his declaration in opposition to the objection [docket #336] which explains how the Debtor misled and/or mistreated him. The information and detail in the declaration of Christopher Stamas is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez. In addition, Mr. Stamas disputes the second sentence by Ms. Gomez and states that her comments were "not true."

[31] The text of the objection to the claim of Sara Jacques [docket #280] is nearly identical to text of the objection to the claim of Mr. Bui [docket #256]. There are no meaningful differences between the pleadings and the only evidence in support of the objection to the claim of Sara Jacques can be found in paragraph 37 of the declaration of Christina Gomez which merely states: "37. With regard to Sara Jacques, claimant #33, she completed the CCC program and CCC helped her get a job at Pechanga casino. She worked there for some time, but declined to deal roulette at Pechanga, and eventually left to pursue a different career." This evidence is not sufficient to rebut the prima facie validity of the claim. In addition, Sara Jacques provided a thoughtful response in her declaration in opposition to the objection [docket #337] which explains how the Debtor misled her. The information and detail in the declaration of Sara Jacques is more extensive, thoughtful and relevant than the pertinent portions of the declaration of Christina Gomez. Ms. Jacques also explains in her declaration that key comments by Ms. Gomez in her declaration are not true.

### C. The Failure to File Opposition Declarations Is Not Fatal.

For the reasons described above and in the footnotes, the Debtor has failed to rebut the prima facie validity of the claims of the twenty-four Creditors. In twenty-one instances, the Creditors filed declarations in opposition to the Objections and those declarations were far more extensive and persuasive than the declarations in the Objections. With respect to two other Creditors - Jane Laxamana (claim #20)[32] and Mariel Saldana (claim #26)[33] - both filed opposition to the Objections but neither filed declarations in opposition to the Objections. Although all the other Creditors filed declarations in opposition to the Objections, neither Jane Laxamana nor Mariel Saldana did so. The reasons for not filing declarations are unknown but that is not a basis for disallowing the claims in this instance.

The Court is denying all twenty-four Objections because the Debtor failed to rebut the prima facie validity of the claims. Therefore, the burden of proof never shifted to the Creditors. To be sure, the declarations submitted by most of the Creditors strongly refute the Objections of the Debtor but, in the end, they are not germane because the Debtor never carried her initial burden in objecting to claims.

### D. The Failure to File Opposition Is Not Fatal.

For similar reasons, the Court will also deny the objection to the claim of Jeffrey Vilasayne (claim #7). Mr. Vilasayne appears to be a member of the class of plaintiffs covered by the state court complaint. He made tuition payments in 2013 which means he is covered by the class action lawsuit.

However, for unknown reasons, neither he nor class action counsel filed opposition to the objection (as occurred with the other twenty-three Objections). Nevertheless, like the other Objections to claims, the evidence in support of the objection to his claim falls short of what is required to rebut the prima facie validity of those claims. For that reason, the objection to that

---

[32] See infra note 19.

[33] See infra note 25.

claim is overruled.

### E.  Conclusion.

A party objecting to a proof of claim based on allegations in a state court complaint need not provide evidence in the objection that definitively refutes the allegations.  However, the objecting party must at least (1) address all the primary allegations and (2) provide some reasonable evidentiary support indicating the possibility that the primary allegations are false.  The Debtor in this case, however, has simply failed to do so.  Thus, the prima facie validity of the claims has not been rebutted and the twenty-four Objections fail. See Garner v. Shier (In re Garner), 246 B.R. 617 (9th Cir. BAP 2000) (holding that a proof of claim with supporting documents attached enjoys prima facie validity – even if it is signed by an attorney – and overruling an objection to the claim because the objecting party failed to attach evidence in support of the objection).

### V.  THE EVIDENTIARY OBJECTIONS.

### A.  The Initial Evidentiary Objections.

In opposition to the Objections, the Creditors filed a pleading with a series of evidentiary objections [docket #312] ("Initial Evidentiary Objections").  It is a lengthy document with detailed objections.  The Debtor filed a reply brief [docket #342] which mentions the evidentiary objections very briefly in paragraph 1.  The reply is not a sufficient response to the Initial Evidentiary Objections.

Having reviewed the Initial Evidentiary Objections and the limited response, the Court hereby rules as follows.  The objections set forth in paragraphs 16-25, 28-30, 34, 36, 39-42, 44-45, 47, 52-54, 56, 64, 67, 69, 71, 73, 77, 79, 84, 86, 88, 90, 95, 98 and 100-102 of the Initial Evidentiary Objections are sustained due to insufficient evidence of personal knowledge of the declarant.  The objections set forth in paragraphs 1-15, 26-27, 31-33, 35, 37, 38, 43, 46, 48-51, 55, 57-63, 65-66, 68, 70, 72, 74-76, 78, 80-83, 85, 87, 89, 91-94, 96-97 and 99 of the Initial Evidentiary Objections are overruled.

### B.    The Second Evidentiary Objections.

The Creditors also filed a second set of evidentiary objections [docket #343] ("Second Evidentiary Objections") in response to the reply brief of the Debtor.  The Debtor attached a declaration of the Debtor to its reply brief and the Creditors object to certain statements in that declaration.  For two reasons, all of those Second Evidentiary Objections are hereby sustained.

First, the Debtor filed the reply brief late.  Pursuant to Rule 9013-1(g) of the Local Bankruptcy Rules, any reply brief must be filed at least seven days prior to the hearing.  In this case, therefore, the reply brief should have been filed by November 10 but the Debtor waited until November 12.  The local rules specifically state that "a reply document not filed or served in accordance with this rule will not be considered." L.B.R. Rule 9013-1(g)(3).

Second, it is unfair to opposing parties for a moving party to include new evidence with a reply brief.  All evidence in support of a motion should be included in the initial moving papers. L.B.R. 9013-1(c)(3)(A).  In rare instances, it may be appropriate to include evidence with reply papers (i.e. if the evidence was not available when the motion was filed).  But in nearly all circumstances, procedural fairness requires that moving parties present all the evidence upon which they intend to rely before the deadline for which opposing parties must respond to the motion.  Opposing parties deserve an opportunity to respond to all evidence which a moving party wants to use against them.  Attempting to present evidence after the opposing parties no longer have an opportunity to respond to a motion is inherently unfair and improper.

Accordingly, all the Second Evidentiary Objections are sustained.  In addition, the declaration of the Debtor attached to the reply brief is stricken.

## VI.  CONCLUSION.

Accordingly, for the reasons stated above and for all the other reasons set forth in the opposition briefs filed by the Creditors, all the Objections are overruled.

IT IS SO ORDERED.

###

Date: November 16, 2020

*Wayne Johnson*
Wayne Johnson
United States Bankruptcy Judge